[L. A. No. 277.  Department One.—April 8, 1898.]

RUSS LUMBER & MILL COMPANY, Respondent, v. MUS-
CUPIABE LAND & WATER COMPANY, Appellant.

120  521
e129  873

Promissory Notes—Failure of Consideration—Contract with Payee—
Fraud—Notice to Indorsee.—In an action by an indorsee of promissory
notes executed by the defendant to an irrigation company, an answer
setting up a total failure of consideration of the notes, and showing
in substance that the sole consideration therefor was a contract for
water, the certificate for which was attached to the notes as collat-
eral security, and that the contract was entered into and the notes
executed under the sole inducement of representations by the irriga-
tion company that it possessed an abundant supply of water to fulfill
the contract, and that it was solvent and prosperous, and able to
meet all its obligations, which representations were wholly false and
fraudulent, and made with intent not to furnish any water to defend-
ant, but to deceive and defraud defendant out of the sum agreed to
be paid in the notes, and alleging that at and before the transfer of
the notes, plaintiff had notice and knowledge of the consideration
and failure of consideration thereof, and of the false representations
of the irrigation company to the defendant, and of its insolvency
and inability to furnish and intention not to furnish any water to the
defendant, states a sufficient defense, both as against the irrigation
company and as against the indorsee of the notes.

Id.—Independent Agreement to Pay Note and Interest—Default of
Payee—Concurrent Conditions —Though the agreement of the irri-
gation company to furnish water upon demand, and the agreement
of the defendant to pay the notes and interest thereon at specified
dates, were not originally concurrent or dependent, and an action
might lie for accrued interest before the irrigation company was in
default; yet if, before suit brought upon any installment of interest,
the irrigation company and its receiver in insolvency made default
in the delivery of water upon demand, and expressed inability to
furnish any water under the contract, all the conditions of the de-
fendant's contract which remain unperformed are to be treated as
concurrent with the agreement of the irrigation company, and the
performance of the defendant's contract could not be enforced while
such default of the irrigation company continued; and the inability
or refusal to furnish water when required by the terms of the con-
tract is a failure of consideration of the notes.

Id.—Demand upon Receiver.—A receiver of an insolvent irrigation com-
pany is not bound to perform its contracts, unless it appears to be to
the interest of the creditors; but a demand upon such receiver to ful-
fill its contract for the supply of water is proper, as he is the only
person who can perform such contract, and it would be to the inter-
est of the creditors for him to deliver the water, if he had it.

Id.—Rescission not Required.—A rescission of the contract for the fraud of
the irrigation company is not required, in order to enable the defend-

ant to plead the defense of failure or want of consideration of the notes, as against an indorsee thereof.

Id.—Assets of Insolvent Company—Defense against Notes.—The fact that the insolvent irrigation company may have assets out of which damages for breach of its contract to deliver water might be collected in whole or in part, cannot affect the right of the defendant, when sued by an indorsee of the notes executed to the irrigation company, to plead a failure of consideration, either total or partial, as a defense, either wholly or *pro tanto*, as against such indorsee.

Id.—Breach of Promise—Fraud.—Although a breach of a mere promise to perform an act cannot convert the promise into a false representation, yet where the promise is accompanied with misstatements as to the ability of the promisor to perform his promise, without which the promise would not be accepted, such misstatements are false representations as to existing facts, which are ground of avoiding the contract; and where the promise is made with the intention of not performing it, such intention constitutes a fraud, for which the contract may be avoided.

Id.—Means of Knowledge—Reliance upon Representations.—The means of knowledge of the defendant that the irrigation company was in the business of selling and furnishing water for irrigation and had a plant and water supply, would charge defendant with knowledge thereof, but the defendant had the right to rely upon the representations of the irrigation company as to the extent of its water supply, and as to previous contracts which must first be fulfilled, and as to its ability to fulfill its contract with the defendant.

Id.—Indorsement of Notes as Collateral Security—Holder for Value—Notice of Defense.—The indorsement of a note before maturity, as security for the pre-existing indebtedness of the indorser to the indorsee fulfills in this state the requirement of value to make such indorsee a holder for value; but when such indorsee takes with notice of a defense to the note against the payee, he stands in the shoes of the payee, and such defense is available against him.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lucien Shaw, Judge.

The facts are stated in the opinion.

Gardner, Harris & Rodman, and L. R. Garrett, for Appellant.

Freeman & Bates, for Respondent.

HAYNES, C.—This appeal is from a judgment in favor of the plaintiff upon demurrer to defendant's answer.  Both parties are corporations.  The action is prosecuted to recover certain semi-annual installments of interest accrued upon five promissory notes executed by the defendant to the Bear Valley Irrigation

Company (also a corporation), and by it indorsed to the plaintiff in September, 1893.

Said notes bear date September 29, 1891, and are payable, re-- spectively, five, six, seven, eight, and nine years after date, each for the sum of three thousand dollars. The interest on all the notes had been paid by defendant to September 29, 1893, and this action was commenced July 24, 1895.

It is stipulated that the answer to each of the five causes of ac-. tion is identical with the others, and hence only the answer to the first cause of action is printed in the transcript, but as that covers fifteen printed pages it cannot be given here in full. An out- line of the defense pleaded, with perhaps some more specific notice of particular allegations as we proceed, is all that is neces- sary.

The answer alleges that the notes were executed in considera- tion of a contract entered into between it and the Bear Valley Irri- gation Company, whereby the irrigation company sold and agreed to deliver a specified quantity of water per acre to the defendant to irrigate one hundred and thirty acres of land; that said con- tract on the part of the irrigation company was in writing, and consisted of what it designated as "Class B, 200 ctfs. Bear Valley Irrigation Company Acre Water Right Certificate," a copy of which is set out in the answer. Each certificate required the de- fendant to pay one dollar and thirty-nine cents on the first day of April and the first day of October in each year, but it was agreed that this clause should not be operative until the defendant began the actual use of water, which use was to begin upon demand of the defendant.

These certificates also show upon their face that they were issued subject to certain contracts of the irrigation company to furnish water to other parties, as to some of which the quantity is specified and as to some it is not, and also subject to "Class A Certificates" issued by it, the number of which is not stated.

The sole consideration of the notes here in suit, it is alleged, was the said contract of the irrigation company evidenced by said certificates, and the consideration for said certificate was the ex- ecution of said promissory notes; that said certificate was attached

to said promissory notes as collateral security for the payment thereof, and remained so attached at the time of the transfer of the notes to the plaintiff, and was transferred with the notes and was afterward detached by the plaintiff. It is further alleged that defendant entered into said contract and executed said notes upon the representation of the irrigation company that it had the water so sold to defendant, and could then, or at any time thereafter, furnish the water agreed to be furnished upon demand; that it had an abundant supply of water to enable it to carry out said contract and the said preferred contracts; that it was solvent and in a prosperous condition financially, and operating its plant at a profit, and able to meet all its obligations; that defendant relied upon said representations, and upon the faith of them alone entered into said agreement and executed said promissory notes. It is then sufficiently alleged that these representations were each and all untrue, and at the time they were made, and ever since, were known by said irrigation company to be untrue; that at the time of making them it did not intend to furnish said water, and made them "with the purpose and object of defrauding this defendant out of the sum agreed to be paid in said promissory notes."

It is also alleged that at and before the transfer of said notes to the plaintiff the plaintiff had notice and knowledge that the consideration of the notes was the said contract of the irrigation company to furnish water and of the insolvency of said company, and of its inability to furnish water thereunder, and of the failure of consideration of said notes, and of the fact that the irrigation company had not, could not, and would not carry out its said contract with defendant, or any part thereof, "and that it did not intend to deliver any of said water to this defendant."

It is also alleged that defendant did not discover the true condition of the irrigation company nor its inability to furnish water and comply with its contract, and that its said representations were false and made with intent to defraud defendant, "until after said promissory notes had been assigned to plaintiff; and defendant made such discovery on or about the month of November, 1893, and not before said month."

It is also alleged that at and before the time of said transfer of said notes said certificates had become, and ever since have been, worthless and of no value, and that "defendant received and retains nothing of value given to defendant in consideration of the execution of said promissory notes."

It is further alleged that said notes were assigned to plaintiff as collateral security for a pre-existing debt, and not upon any new or other consideration, and that at the time of the transfer plaintiff already held other security for said debt in amount and value far exceeding said debt; that on the —— day of November, 1893, a receiver was duly appointed of all the property of said irrigation company, and its said property has ever since been in the hands of receivers, and that said company is insolvent.

Defendant further alleges "that it has heretofore demanded" of the irrigation company the delivery of water under said contract, and has also about the middle of April, 1894, and again about the middle of April, 1895, made a like demand upon the receivers of said company, and has offered to pay the interest due on said notes, and the semi-annual payments required by said contract to be paid when the water should be delivered, and has made the like offer to the plaintiff.

The demurrer is general and special, the latter that the answer is ambiguous, and that it is uncertain in particulars therein stated.

The principal questions discussed by counsel for the respective parties may be grouped and considered under two propositions which may be interrogatively stated thus: 1. Would the matters pleaded in the answer constitute a defense if this action had been brought by the Bear Valley Irrigation Company, the payee of the notes in suit, 2. If so, were the notes in suit transferred to the plaintiff under such circumstances, and for such consideration, as makes that defense available to the defendant in this action which is prosecuted by the transferee?

1. The first of these interrogations should be answered in the affirmative. The failure of the irrigation company to furnish water upon demand put it in default, and that default occurred before suit brought.

It is true, as stated by respondent, that the agreement of the irrigation company to furnish water upon demand, and the agreement of the defendant to pay the notes and the interest thereon at specified dates, were not concurrent or dependent, and hence an action might lie for accrued interest before the water company was required to do any act.

But if before suit brought to recover such installment of interest the plaintiff made default in the performance of an act required to be performed by the conditions of its contract, as here, the delivery of water upon demand, the plaintiff must treat all the preceding agreements of the defendant, which remain unperformed, as concurrent, since he cannot enforce the performance of defendant's part of a contract while he is in default in the performance of his part of it. (*McCroskey v. Ladd*, 96 Cal. 455.) The answer alleges that at dates prior to the commencement of this action the defendant demanded the delivery of water under said contract of the receiver of the property of the irrigation company, and that the receiver did not deliver the water, but admitted his inability to deliver the quantity required or any part of it. It is alleged, also, that defendant "has heretofore demanded" of the irrigation company the delivery of water under said contract, and received the like reply, but the date of that demand is not given. These demands, it is alleged, were accompanied with an offer to pay all accrued interest, and to make the semi-annual payments required by the certificate.

The receiver, it is true, was not bound to perform any of the contracts of the irrigation company unless it appeared to be to the interest of the creditors, or unless required to do so by the order of the court; but nevertheless the demand was proper, since he might perform it if there was sufficient water for the purpose, and was the only person who could perform it, since the possession and control of the property had passed out of the hands of the irrigation company. The business of the irrigation company is alleged to be that of selling and supplying water to parties owning land requiring irrigation, and it therefore appears that it was to the interest of creditors that the receiver should deliver the water if he had it.

This inability, or refusal, to furnish water when required by the terms of the contract is a failure of the consideration upon which the notes were executed.

But it is contended by respondent that to avail itself of this defense the defendant should have rescinded the contract; that defendant alleges a discovery of the fraudulent representations which induced the contract as early as November, 1893, but continued to make demands for water for two or three years thereafter with no attempt at rescission; that, in order to rescind, the defendant must restore everything of value it has received; that though it has received no water (which was the real subject of the contract) it has not abandoned or surrendered the contract or given notice that it makes no claim under it.

If the plaintiff, the Russ Lumber and Mill Company, received the notes in the usual course of business, in good faith, without notice, and for value, a notice of rescission to the irrigation company, the payee of the notes, given after the transfer, could not affect the indorsee; nor could the indorsee in such case be affected by a subsequent breach of the contract by the indorser; but if the indorsee did not so acquire the notes it must then stand in the shoes of the payee and be subject to any defenses available against the payee.

But it does not follow, as contended by respondent, that because a technical rescission has not been made, and cannot be made in this action, to which the irrigation company is not a party, that the defendant cannot avail itself of the defense of failure or want of consideration.

Practically, there is no difference in the effect upon the contract between the successful defense of a plea of want or total failure of consideration, and the successful termination of an action to rescind it. In either case the contract is rendered incapable of enforcement, the judgment being a bar to any future action, so far at least as parties to the action, or those concluded by it, are concerned. Where the failure of consideration is total, as where nothing of value has been received by the defendant under it and the plaintiff cannot perform it, no notice of rescission is required, but the defendant may plead want or failure of consideration.

Respondent cites *Clyne v. Benicia Water Co.,* 100 Cal. 310; but the facts of that case clearly distinguish it from this.

In this case the water agreed to be delivered was the subject of the contract. The defendant had bought it and paid for it by the execution of its promissory notes. The contract, called a water right certificate, was the evidence of the sale of the water, the water so purchased to be delivered in future years, the beginning of such delivery to be upon defendant's demand. Such demand was made and not complied with. The defendant therefore received nothing under the contract. But it is said that the certificate has not been surrendered or canceled or the irrigation company released therefrom, or any offer made to release it. This certificate gives the defendant no interest in the property of the irrigation company. It is not stock in a corporation. Whilst the water called for by it is for the use and benefit of certain lands of the defendant, it expressly provides that it is not appurtenant to any land. It further provides that it can be transferred only by its surrender, properly indorsed, and the issuance of a new certificate. Not only so, but the answer alleges that it was held by the irrigation company as collateral security for the payment of the notes, that it was pinned thereto and passed to the plaintiff with the notes. The object in requiring a party rescinding a contract to restore to the other party everything of value he has received under it is that the party to whom the restoration should be made shall not be put to an action to recover it. In this case the plea of a total failure of the consideration of the notes, if it succeeds, leaves the certificate in the hands of the irrigation company or of the plaintiff, discharged of all duty or liability to furnish water under it, and nothing more could be accomplished by its surrender if it were now in defendant's possession, or by a judgment of rescission if the defendant had brought an action for that purpose.

It is, of course, conceded that if the plaintiff acquired the notes for a valuable consideration and without notice or knowledge of any fact that would impeach them in the hands of the payee, the plaintiff would be entitled to recover, and that the defendant in such case might have a remedy against the irriga-

tion company upon its guaranty or for breach of the contract, and therefore the authorities cited by respondent upon these points need not be noticed.

It is contended by respondent that it does not appear that the irrigation company has at any time been without assets so that its promise was without value, or that its obligations may not be ultimately fulfilled and that it may have assets out of which its debts may be paid or payment enforced, and therefore concludes that the failure to fulfill the contract was only partial, and that a partial failure without rescission would not be a defense.

It may be true that the irrigation company, though insolvent, has assets out of which damages for a failure to perform its contract might be collected in whole or in part, but its contract was to deliver water, not to pay money; and if it delivered no water, and had none to deliver, and were sued for damages, it would in all probability be sued for a total failure to perform its contract.

But a failure of consideration, either total or partial, may be pleaded as a defense to an action upon a promissory note, either wholly or *pro tanto*. (See *Drew v. Towle*, 27 N. H. 424; 59 Am. Dec. 380, and numerous authorities there cited; 2 Am. & Eng. Ency. of Law, 369, and notes; *Tillotson v. Grapes*, 4 N. H. 444.)

It is further contended by respondent that "the representations were respecting future acts only," and that such representations "do not, in contemplation of law, amount to a fraud," and could be neither false nor true when made.

But counsel in this contention confuse and fail to distinguish between "promises" and "representations." A mere promise to perform an act in the future is not, in a legal sense, a representation, nor does a failure to perform such promise convert it into a false representation; but if the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and if falsely made are grounds of avoiding the

CXX. CAL.—34

contract, though the thing promised to be done lies wholly in the future.

Here the defendant alleges that the irrigation company represented that it had the water which it agreed to furnish, and that it was prosperous financially. A sufficient water supply to enable it to fulfill its contracts was a representation of a material existing fact, and its prosperous financial condition not less so, since its ability to retain possession and control of its water plant gave assurance of its permanent ability to fulfill its contracts; the materiality and importance of which is shown by the further allegation that it had become insolvent, and its property had passed out of its control and into the hands of a receiver. But while a mere promise is not a "representation," a promise made with the intention of not performing it constitutes a fraud for which a contract may be rescinded or avoided.

Respondent also contends that "defendant's want of diligence and willful blindness cannot entitle it to relief; that there is no suggestion in the answer that the defendant did not at all times have within easy access the means of knowledge respecting the property of the irrigation company and its capacity to furnish water to the defendant."

It may be conceded that defendant had the opportunity of knowing, and was bound to know, that the irrigation company was engaged in the business of selling and furnishing water for irrigation and for that purpose had a plant and a water supply; but it is obvious that as to the extent of its water supply, and of its previous contracts which should be first fulfilled, the defendant would be obliged in any event to rely upon information derived from the irrigation company, and such information is contained in the alleged representation that it had the water sold to defendant after fulfilling the preferred contracts, and that it could and would supply the defendant as specified in its contract. It is true that the contract was made subject to certain prior contracts specified therein, among which was "Class A Certificates," and a contract with the north and south fork ditch companies, as to which the quantity of water was not specified, and that therefore a contingency was provided for which might inter-

fere with the constant and unconditional fulfillment of its contract with the defendant; but construed in the light of its representation to the defendant, above stated, the qualification means that under unusual conditions there might temporarily, and at occasional times, be an insufficient supply of water to meet all its engagements, and certainly did not mean that defendant was to be supplied only when there was an exceptional abundance ,of water.

I conclude, therefore, that the answer presents facts, sufficiently alleged, to constitute a defense if the irrigation company were the plaintiff.

2. The second interrogatory I think should also be answered in the affirmative.

It is alleged that the irrigation company falsely represented that it had the water to fulfill its contract with the defendant, and that it could and would furnish the water so sold; that at the time of making said representations said irrigation company did not intend to furnish said water, but made the same with the purpose and object of defrauding defendant out of the sum agreed to be paid in said promissory notes. It is then alleged as follows: "That at the time said note was transferred to plaintiff herein, plaintiff had notice and well knew that all such agreements and representations aforesaid had been made and entered into between said Bear Valley Irrigation Company and this defendant; that no consideration had been given by said Bear Valley Irrigation Company to the defendant herein for the execution of said so-called promissory note, and that said Bear Valley Irrigation Company had not and could not deliver any of said water to the defendant, and did not deliver any of said water to the defendant, and that it did not intend to deliver any of said water to the defendant."

It is also further alleged that plaintiff had knowledge and notice prior to the transfer of the notes to it that the sole consideration thereof was the agreement of the irrigation company to deliver said water to the defendant, that plaintiff had notice and knowledge of the insolvency of the irrigation company, and its inability to meet its obligations, and that it could not carry out its said contract, and of the want of consideration of said

notes, and also alleges that plaintiff had knowledge and notice of the failure of the consideration of said notes.

Without going more fully into the allegations of the answer upon the point of notice, we think that these allegations present a sufficient defense to require that the demurrer be overruled.

Some other questions, however, require notice. Appellant argues that the plaintiff having taken the notes as collateral security for a pre-existing indebtedness, and no consideration having passed from the irrigation company to the plaintiff, and none given by the plaintiff to the irrigation company, and no change having been made in the existing relation between the parties, the plaintiff is not a holder for value and is subject to any defense that would have been available against the payee.

Many authorities may be cited in support of this contention. There are few questions upon which there is a greater conflict in the decisions of the courts of different states.

In *Payne v. Bensley,* 8 Cal. 260, 68 Am. Dec. 318, the court, without giving any decided opinion upon the point above stated, held that receiving such security for an antecedent debt was a surrender of the right of attachment; that such right was a valuable one and a sufficient consideration. But in this case there is the further allegation that at the time of the transfer the plaintiff held other security in an amount and value exceeding the debt of the indorser, which, under the holding in *Payne v. Bensley, supra,* had already taken away the right of attachment, and hence the waiver of that right could not be a consideration for the transfer of these notes. But in *Sackett v. Johnson,* 54 Cal. 109, it was said that this question cannot be considered as an open one in this state. (Citing all the previous cases.) In *Sackett v. Johnson, supra,* it was urged by counsel that at the time of the transfer of the note, taken as collateral, the right of attachment did not exist, as the plaintiff had taken a deed of real estate as security. The question here before us was therefore before the court and must have been decided in that case.

It is alleged in the answer that at the time the notes were transferred to the plaintiff the certificate or contract of the irrigation company was attached thereto; that plaintiff had notice that the

said contract was the consideration of the notes, and also that at and before the transfer of the notes the irrigation company was insolvent, and that plaintiff knew of its insolvency, and knew that by reason of such insolvency it was entirely unable to carry out its contract with the defendant. These facts would clearly constitute a good defense if the action were prosecuted by the irrigation company, and if the plaintiff took the notes with notice or knowledge of facts constituting such defense it is not an indorsee in good faith, and stands in no better position than its indorser; and so of any defense which existed at the time of the transfer of which the plaintiff had notice or knowledge.

It is objected that the allegations of the answer are too vague and general and evasive.

That the answer is not obnoxious to this objection I think sufficiently appears from the foregoing discussion.

I advise that the judgment appealed from be reversed.

Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed.

              Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.

Beatty, C. J., being disqualified, did not participate.